[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiff, Frank Gargano ("Gargano") has made application to this court, as provided in General Statutes, Section 52-417, to vacate or modify an arbitration award made pursuant to the provisions of General Statutes, Sections 42-179 et seq., the so-called "lemon law". The defendant, Daimler Chrysler Corporation, objects and has filed its application, pursuant to General Statutes 52-4 18, for an order confirming said award.
A hearing on the applications was held on March 29, 1999, at which both parties appeared and were represented by counsel and oral argument was heard. Both parties submitted memoranda of law in support of their respective positions.
 II
In December, 1995, the plaintiff purchased a Chrysler Town 
Country minivan from Michael Chrysler-Plymouth-Isuzu ("the dealer"), a Chrysler dealer in New London. Subsequent to purchase, various problems emerged with certain components of the vehicle; some were corrected by the dealer. Others, Gargano testified, were not. In September, 1998 Gargano availed himself of the arbitration procedure provided by General Statutes, Section 42-181. An arbitration hearing was held on December 16, 1998, following which, on the same date, the arbitration panel issued its decision, finding adversely to the consumer and ordering no action be taken by the manufacturer.
 III
The court's review of an arbitration award is limited. Under General Statutes, Section 52-418, the court may vacate such award only upon finding any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of CT Page 10007 misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or have so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. There is no claim here based on grounds (1), (2) or (3) and the court finds grounds (1), (2) and (3) inapplicable to the instant matter. Further, the court concludes, on review of the record, that the arbitrators have not exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
In addition to the grounds set forth in Section 52-418, Section 42-181 provides that "the court shall consider questions of fact raised in the application. In reviewing questions of fact, the court shall uphold the award unless it determines that the factual findings of the arbitrators are not supported by substantial evidence in the record and that the substantial rights of the moving party have been prejudiced. If the arbitrators fail to state findings or reasons for the award, or the stated findings or reasons are inadequate, the court shall search the record to determine whether a basis exists to uphold the award."
In reviewing an arbitration award, every reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings, State v. AFSCME Council4, Local 1565, 49 Conn. App. 33, 36 (citation, internal quotation marks omitted).
The only finding of fact made by the panel was a preliminary finding that, "After reviewing the allegations, the panel has deemed this case eligible for an arbitration hearing pursuant to Connecticut General Statutes, Chapter 743b.". The sole reason for its decision stated by the arbitration panel was: "The documentation and/or testimony presented at the hearing do not indicate a violation of the Connecticut General Statutes, Chapter 743b. Specifically, the consumer failed to present evidence that the impairment substantially impaired the use, value or safety of the vehicle."
The plaintiff claims that the reason, as stated, required the panel to have found, as conditions precedent: that there was a CT Page 10008 manufacture's defect; that said defect was covered by an express warranty; that the manufacturer had a reasonable amount of time to correct the defect; that the manufacturer failed to correct the defect; and that the defect still exists. In the absence of findings by the panel relating to these issues, the court will not impute said findings to the panel. The reason, as stated, raises more questions than it answers and is found inadequate. Accordingly, the court must search the record to determine whether a basis exists to uphold the award.
 V
At the time of the arbitration hearing and in its application to the court, the plaintiff concentrated on two claimed defects, intermittent noise and pulsating of the brakes; and on-going, intermittent problems with the electrical system. Any other claims are considered abandoned.
As to the alleged defect in the braking system, resulting in intermittent groaning sounds and pulsating, the court finds there is substantial evidence in the record to support the panel's decision in favor of the manufacturer. There was testimony by the defendant's witness, David Bonin, that such noise and pulsating are normal, not indicative of defects and present no safety problem (Arbitration Hearing, Transcript, pp. 28-29) The panel was entitled to credit this testimony and reject testimony of the plaintiff to the contrary, and to conclude that the alleged defect did not substantially impair the use, safety or value of the subject motor vehicle.
The plaintiff claims there is an on-going problem with the electric system, as reflected by such events as loss of radio reception, malfunctioning clock, interior lights going on and off, self-locking and unlocking doors self-starting rear windshield wiper, malfunctioning alarm system.
The plaintiff first raised with the dealer his concern regarding electrical problems on December 22, 1997, including malfunctioning clock, radio, interior lights, rear windshield wiper. The dealer, on inspection, did not experience the problem and took no corrective action. In February of 1998, the plaintiff contacted the dealer, reported he was still experiencing electrical problems; the plaintiff wanted to leave the vehicle for service and requested a loaner. The dealer agreed, but because of death in the family, the plaintiff didn't bring the CT Page 10009 vehicle in until June. The dealer's technician drove the vehicle daily over a two week period and eventually experienced some of the problems complained of. As a result of this inspection, the dealer ordered and installed a multi-function switch which operates the windshield wipers, the turn signals; and a headlight switch. This was the last service by the dealer. Subsequently, the plaintiff took the vehicle to another dealer, who replaced the radio, and apparently installed a rear door latch switch. Nonetheless, the plaintiff testified, problems continued with electrically operated items. By December 1, 1998 the vehicle's alarm system began malfunctioning intermittently.
In the course of the arbitration hearing, there was testimony that the alarm system was not factory-installed (Arbitration Hearing Transcript, Gargano, pp. 13, 18-19; Sanders, pp. 19, 27).
Gargano himself raised the possibility that the alarm system could be the source of the electrical problem (p. 11):
Gargano: My concern is that; is this an electrical problem somewhat related to something that was done at the dealership after the fact? I don't know that.
But, the fact that someone is refusing to stand up and say, yeah, that's how was installed; no it wasn't done at the factory, as I was told it was going to be; but it was done at the dealership after-the-fact. Doesn't that have some bearing and relevance to the fact that there may be an electrical problem here? Did somebody mess with something in this vehicle after the fact that has now manifested itself?
There was substantial evidence in the record to support a conclusion that the alarm system was not factory-installed and the panel was free to conclude that any problems stemming from that installation were not the responsibility of the manufacturer.
Gargano's attribution of the various malfunctions to an underlying problem with the electrical system remains a surmise, which the panel was not required to accept as fact. There was testimony in the record that certain of these problems were corrected by replacement of parts, e.g. a multifunction switch, a headlight switch, a latch switch, or of the item itself, e.g. a radio. By the time of the arbitration hearing, the plaintiffs complaints with regard to the electrical problems were the alarm CT Page 10010 system and the "buzzing" of the door locks. While Gargano stated his concern that "we seem to move from one electrical problem to another" (Arbitration Hearing Transcript, p. 17), the panel was free to conclude that the problems cited were unrelated and remedied separately; or that all or some were non-existent. The panel was entitled to consider the vehicle had been driven some 30,000 miles by the time of the arbitration hearing.
At the arbitration hearing the burden of persuasion was on the plaintiff. The determination of a witness' credibility rests with the trier of fact. The court must not attempt to substitute its judgment for that of the panel. The court finds, after a search of the record, that there is a basis therein to uphold the award in this matter.
Accordingly, the plaintiffs application to vacate or modify award is denied and the defendant's application for an order confirming the award is granted.
Downey, J.